### KING v. STATE.

[86 South. 874, No. 21619.]

FALSE PRETENSES. *Elements of offense stated; evidence held insuf-
ficient to sustain conviction.*

It is not sufficient, to sustain a conviction for obtaining money
under false pretense, to prove merely that a representation was
false in fact; but the proof must show that that statement was
known to be false by the person making it, or he must state the
fact in such way as to carry assurance to the party that he is
dealing with that the representation is true of his knowledge,
and the representation must have been the efficient cause of the
money being paid to such party.

APPEAL from circuit court of Washington county.
HON. S. F. DAVIS, Judge.

Fred King was convicted of obtaining money under false
pretenses, and he appeals. Reversed and rendered.

*Franklin & McGehee,* for appellant.

There is no testimony showing that the appellant in-
tended by his statements to Anthony and to his steno-
grapher, about the option, to cheat and defraud Charles

Roberson (and these were the only statements that he is credited by anyone with having made in the matter), and there is nothing to show in his action and dealings with Roberson afterwards that he intended to cheat and defraud him. He was in Memphis at the time the trade was made, and when it failed to go through, he granted every request of Roberson and agreed to credit him with the money, at his own request, on another contract, and thus the matter stood at the time of the appellant's indictment, trial and conviction.

In the case of *Pittman* v. *State,* decided by this court, in 58 So. at page 532, it was held that: "In order to constitute an offense under the above section (after quoting the section under which the defendant in the case at bar is indicted) the false pretense relied upon for conviction must be accompanied by something more than a mere false statement of a fact whereby money or other valuable thing is obtained from another. Such false statement must also be accompanied by an intent to cheat and defraud the person from whom the money, etc., is obtained. If money is obtained by reason of any false pretense unaccompanied by an intent to cheat or defraud, no crime is committed, etc.

With all due deference to the court below, we maintain with implicit confidence that the record in the case at bar did not present an issue that was entitled to have gone to the jury, and we respectfully submit that the judgment herein should be reversed.

*Walton Shields,* for appellant.

A great deal of the testimony is incompetent and exceptions were taken thereto. Competent testimony offered by the defendant was excluded and the defendant's motion to exclude the testimony when the state rested should have been granted as it is entirely insufficient to convict the defendant of the charge against him. The peremptory in-

struction asked by the defendant at the conclusion of the evidence should have been given.

The court modified the instructions for the defendant by inserting the words "or to some other person" therein. Under this indictment the state was limited to porof that the intention was to defraud Charley Roberson and in order to make the court's modification correct, the indictment should have contained the words "or to some other persons unknown" after the words "Charley Roberson."

The state's instructions are also erroneous particularly in that portion in which the court tells the jury that if King's statements to Anthony were made with the intent to defraud generally, they should convict. The demurrer to the indictment should have been sustained for the reasons stated in the demurrer. See *State* v. *Freeman,* 103 Miss. 764, 60 So. 774.

We respectfully submit that the case should be reversed and the defendant discharged.

*Wm. Hemingway,* assistant attorney-general, for the state.

The first ground of the demurrer is that the indictment fails to show why Charley Roberson paid the money to defendant and why such false pretenses should have moved him to make the payment to defendant. This appears to be more a matter of evidence than of an improper charge in the indictment. The indictment sufficiently alleges that on account of the claim of an option which was false Charley Roberson paid the money to defendant.

The third ground of the demurrer is that the indictment fails to allege with sufficient certainty and clearness that the alleged pretense was enough to induce Roberson to turn over the money to defendant. The indictment alleged that the money was obtained, "by means and color of which false pretenses," which is sufficient under *State* v. *Dodenhoff,* 88 Miss. 277, 40 So. 641. It is contended by the state that this case covers all the grounds of demurrer. The defendant in this case was by this indictment fully informed as to the precise crime with which he

was charged, and the state claims that it was proper to overrule the demurrer.

Appellant cites *State* v. *Freeman,* 103 Miss. 464, 60 So. 774, to support the contention that the demurrer should have been sustained. That decision is correct on the facts of that case. In this case, however, the facts would not support the opinion in the Freeman case. In the 'Freeman case the facts fail to disclose the relation of the defendant to the firm of Caldwell & Smith, or why this man should have parted with his money to the pretended representative. In that case the indictment failed to charge that the offense was committed feloniously. There is no such error in this indictment. The indictment in the instant case states that on account of this pretended option and power to sell the said Charles Roberson the following described land, etc., and that he did obtain the money from him on account of that option, the option to sell which gave him the power to sell, and in that capacity he did obtain this money. The indictment might have been plainer but it is certainly clarified by the evidence. The case of Deenhoff, fully sustains this indictment.

ETHERIDGE, J., delivered the opinion of the court.

The appellant was indicted for obtaining money under false pretenses; the indictment alleging that King, devising and intending to cheat and defraud Charles Roberson, did then and there designedly, falsely, fraudulently, and feloniously pretend to the said Charles Roberson that he, the said Fred King, did then and there have an option and power to sell to said Roberson certain lands, describing the lands, by means and color of which said false pretenses he, the said King, did then and there designedly, fraudulently, and feloniously obtain of and from him, the said Charles Roberson, money to the amount of five hundred dollars, whereas, in truth and fact, said Fred King did not then and there have an option and power to sell

the said lands, all of which the said King then and there well knew, etc.

It appears from the evidence that King was engaged in the real estate business at Memphis, Tenn., and at Leland, Miss.; that he secured the services of a person in Washington county to procure lands for sale for him, and that the said person reported to King that he could sell the lands described in the indictment at and for twelve thousand dollars. The lands in question belonged to a colored person by the name of Sandy Wilson, and, when the representative of King informed King that he could obtain this place for sale, King had it listed in his office at Leland, Miss., in which office he had two persons employed.

One of these agents, after the land was listed, took up with Roberson the proposition of selling Roberson the lands in question belonging to Wilson, and procured a contract from Roberson to sell the said lands to him at and for the sum of sixteen thousand eight hundred dollars, five hundred dollars to be paid in cash, five thousand dollars to be paid on January 1, 1920, and the balance to be divided into six equal annual payments, to be paid on January 1, 1921, and annually thereafter on the 1st day of January of each succeeding year until all were paid, with the privilege of retiring all of the notes at any time within sixty days of the date of the contract at a discount of five per cent. for cash. The contract contained the following concluding clause:

"This contract to be made subject to the approval of the owner of the land."

It appeared from Wilson's testimony that he had not authorized the sale of this place; that, when the person named as the agent of King approached him for the sale of the said place, he told him that he did not care to sell; that this person then asked him, "Would you take twelve thousand dollars for the eighty acres of land?" and that he said he might do that.

After the contract was signed by Roberson and the King Real Estate Agency, by its agent, Anthony, there was some

correspondence between King and Roberson, in which King stated that he would be ready to deliver the title to the land at the time mentioned in the contract. When the time came for the first payment, the five thousand dollars, Roberson was not able to pay the money, and a new deal was made on a different piece of property, in which Roberson got the benefit of the money that he had paid to King's agent on the signing of the contract. Anthony and King seem to have had a falling out, and Anthony was the chief witness for the state. Mr. Anthony was asked:

"Q. Did Mr. King ever make any statement to you with reference to whether or not he had an option on lands belonging to Sandy Wilson? A. He did.

"Q. Tell the jury what was said between you and Mr. King with reference to an option on the Sandy Wilson land. A. Well, Mr. King simply told me, on his return from Hollandale, I believe, one day, that he had an option on Sandy Wilson's land, and I knew Sandy had several tracts, and I asked him if he had an option on Sandy's eighty on Murphy's Bayou, and he answered he did.

"Q. Who did you sell this particular land to? A. Charles Roberson.

"Q. What did you tell Charles Roberson with reference to whether or not you had an option on it? (Objected to. Overruled. Exception by the defendant.) A. I don't remember whether or not I told Charlie positively that we had an option on the land. That was never a custom to bring out that particular point in making a sale. However, it was taken for granted that we did have the option. (Objected to. Sustained. Exception by the state.)

"Q. What did you do, with reference to Charles Roberson, with reference to the sale of the land? A. I showed him the land, and drew up the contract with him to deliver the land."

He further testified that he made the sale after the land was listed in the office and that he was relying upon the listed land in the files.

Charles Roberson testified for the state, and was asked the question:

"Q. Did he tell you whose land it was? A. No, sir; he did not tell me no more than he told me it was a piece of land Mr. King had for sale."

He testified, further, that he never had seen Mr. King until after the transaction was completed, and that he had agreed to apply the five hundred dollars paid on the transaction about which King is indicted on a new contract for other lands.

Mr. Carter, the other agent in the King Real Estate Agency at Leland, testified that Howell, the person employed by King to secure lands for sale, told Mr. King in his presence that Wilson would sell the land for twelve thousand dollars, and that they listed the lands in good faith; and Howell also testified that he related to Mr. King that Wilson's land could be bought for twelve thousand dollars.

It will be noted from the indictment that the allegation of the indictment is that King falsely, fraudulently, and feloniously pretended to Roberson that he had an option and power to sell to the said Roberson the lands in question. The proof shows beyond dispute that King made no representation to Roberson personally, and the rule is settled that the proof must correspond to the allegations of the indictment. The proof further shows that no representation was made to Roberson by any one that King had an option to sell the land. The statement of the state witness, who dealt with Roberson as agent of King, is that he told Roberson he had the land for sale. It is not sufficient to sustain an indictment for obtaining money under false pretenses to prove that representation was false as a matter of fact; but the statement must be known to be false by the party making it, or he must state the fact in such way as to carry assurance to the party he is dealing with that the representation is true of his (the maker's) knowledge. In other words, the representation

must be made, knowing it is false at the time the person makes it who is charged with making the false pretenses.

The evidence fails utterly, we think, to meet this requirement. The evidence not only fails in this respect, but it fails to show that the representation was the efficient cause of the party being defrauded. We think the evidence wholly insufficient to sustain the indictment in this case. Certainly a party dealing in real estate, who employs agents to assist him in his business, has a right to rely upon statements such agents make to him, and the present case is not different, we apprehend, from hundreds of *bona fide* listing lands for sale by real estate agents, and the contract taken in the present case showed distinctly on its face that the sale was made subject to the approval of the owner. The owner was never requested to make a deed, and it is not shown affirmatively that he would not have accepted the sale as made, if the buyer had tendered the money according to the contract. If the deed had been tendered the owner, and he refused to sign and deliver the deed, then the obligation of King would have been to return the money or buy the property. We do not mean to say that a person listing lands for sale without authority, and procuring money on the representation that he had the right to sell, would not in proper cases make an offense under this statute. If the state relies on facts similar to the present case, the indictment ought to be framed so as to charge the facts properly, to show that the land was listed and the agent of the person listing same induced to act with the purpose of defrauding. Where the indictment charges the representation to be made by a named person to another, as in the present case, the proof ought to correspond to the allegation.

It follows, from what we have said, that the judgment of the court below was erroneous, and the peremptory instruction requested by the defendant should have been given, and for said error the judgment is reversed, and judgment rendered here discharging the appellant.

Reversed, and judgment here for appellant.

*Reversed.*